1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11    WALTER WELLS, et al.,                    No. 1:20-cv-00770-TLN-BAM

12                    Plaintiffs,

13          v.                                 **ORDER**

14    COUNTY OF STANISLAUS, et al.,

15                    Defendants.

16

17          This matter is before the Court on two Motions to Dismiss: (1) Defendants County of

18    Stanislaus ("County"), Stanislaus County District Attorney's Office ("County DA's Office"),

19    Birgit Fladager, Kirk Bunch, Steve Jacobson, and Cory Brown's (collectively, "County

20    Defendants") Motion to Dismiss (ECF No. 64); and (2) Defendants City of Modesto ("Modesto")

21    and Jon Evers's (collectively, "City Defendants") Motion to Dismiss (ECF No. 66).[1]  Plaintiffs

22    Walter W. Wells and Scott McFarlane (collectively, "Plaintiffs") oppose each motion.  (ECF Nos.

23    79, 80.)  Defendants filed replies.  (ECF Nos. 84, 85.)  For the reasons set forth below, the Court

24    DENIES Defendants' motions.

25    ///

26

27    _____

      [1]       When the Court discusses County Defendants and City Defendants together, it will refer

28    to them collectively as "Defendants."

                                               1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 2012, an individual named Korey Kauffman ("Kauffman") was reported missing.  (ECF No. 61 at 13.)  On April 4, 2012, Defendant Bunch ("Bunch"), a criminal investigator for the Stanislaus County District Attorney's Office, filed a report that included statements from an informant named Michael Cooley ("Cooley"), who was the last person to see Kauffman alive.  (*Id.*)  Cooley implicated prominent criminal defense attorney Frank Carson ("Carson") in Kauffman's murder.  (*Id.* at 13–14.)  Plaintiffs, two former California Highway Patrol officers, allege Defendants arrested and falsely accused them of participating in a conspiracy to murder Kauffman.  (*Id.* at 39.)  The state court dismissed the charges against Plaintiffs in January 2020.  (*Id.* at 48.)

Plaintiffs filed the instant action on May 29, 2020.  (ECF No. 1.)  Plaintiffs filed the operative Second Amended Complaint ("SAC") on November 18, 2021, alleging various 42 U.S.C. § 1983 claims and state law claims.  (ECF No. 61.)  On January 10, 2022, Defendants filed the instant motions to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (ECF Nos. 64, 66.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, '[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Adams v. Johnson*, 355, F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

1    amend even if no request to amend the pleading was made, unless it determines that the pleading

2    could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

3    1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995));

4    *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

5    denying leave to amend when amendment would be futile).  Although a district court should

6    freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

7    deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint."

8    *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting

9    *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

10       **III.   ANALYSIS**

11       County Defendants move to dismiss for the following reasons: (1) the SAC constitutes an

12   impermissible shotgun pleading; (2) claims for conduct that occurred before May 29, 2018 are

13   time-barred; (3) Wells's claims based on dismissed murder charges are barred by the statute of

14   limitations; (4) the official capacity claims against the County DA's Office are redundant to the

15   claims against the County; (5) claims against Fladager based on her role as a prosecutor should be

16   dismissed without leave to amend; (6) Plaintiffs fail to state claims for malicious prosecution; (7)

17   Plaintiffs fail to state *Monell* claims; (8) Plaintiffs fail to state claims for unreasonable seizure

18   under the Fourth and Fourteenth Amendments; (9) Plaintiffs fail to state Fourteenth Amendment

19   claims for deliberate fabrication; (10) Plaintiffs fail to state Eighth Amendment excessive bail

20   claims; and (11) Fladager is entitled to immunity under California Government Code § 820.8 on

21   Plaintiffs' state law claims.[2]  (ECF No. 64-1.)

22       City Defendants move to dismiss for the following reasons: (1) Plaintiffs' allegations are

23   conclusory; (2) Plaintiffs' *Monell* claims fail; (3) Evers is not vicariously liable for the actions of

24   others; (4) Plaintiffs' claims against Evers for malicious prosecution fail; (5) Plaintiffs' Fourth

25   _____

26   [2]       In opposition, Plaintiffs note that they have dismissed the County DA's Office as a
     Defendant, claims brought against Fladager and Bunch in their official capacities, the portion of

27   Claim Two brought under the Fourteenth Amendment, and Claims Two, Five, Six, and Seven
     against Fladager.  (ECF No. 80 at 10 (citing ECF No. 75).)  Plaintiffs oppose County Defendants'

28   motion on all remaining grounds.

                                                      4

1  Amendment unreasonable seizure claims fail; (6) Plaintiffs' deliberate fabrication of evidence

2  claims fail; (7) Plaintiffs' excessive bail claims fail; (8) Evers is entitled to qualified immunity;

3  (9) Plaintiffs' common law false arrest/imprisonment claims fail; (10) Plaintiffs' negligent and

4  intentional infliction of emotional distress claims fail; and (11) if any of the claims survive, City

5  Defendants request a more definite statement.  (ECF No. 66.)

6       The Court will address the parties' arguments in turn.  To the extent Defendants'

7  arguments overlap, the Court addresses those arguments from both motions together.

8       A.    Shotgun Pleading

9       Defendants argue the Court should dismiss the SAC as an impermissible shotgun

10  pleading, as it did in its previous Order.  (ECF No. 64-1 at 12; ECF No. 66 at 16.)

11       Rule 8 requires "each averment of a pleading to be simple, concise, and direct."  *McHenry*

12  *v. Renne*, 84 F.3d 1172, 1177–78 (9th Cir. 1996) (internal quotation marks omitted).  To comply

13  with Rule 8, a complaint should clearly and fully set forth "who is being sued, for what relief, and

14  on what theory, with enough detail to guide discovery."  *Id.* at 1178.  Shotgun pleading occurs

15  when: (1) one party pleads that multiple parties did an act, without identifying which party did

16  what specifically; or (2) when one party pleads multiple claims and does not identify which

17  specific facts are allocated to which claim.  *Hughey v. Camacho*, No. 2:13-cv-02665-TLN-AC,

18  2014 WL 5473184, at *4 (E.D. Cal. Oct. 23, 2014).

19       In its previous Order, the Court dismissed the First Amended Complaint ("FAC") as a

20  shotgun pleading because Plaintiffs addressed Defendants collectively in nearly all the allegations

21  and claims.  (ECF No. 51.)  In contrast, the much-improved SAC adds considerable factual detail

22  (ECF No. 61 at 12–50), delineates the "wrongful acts" of each Defendant (*id.* at 50–64), and

23  specifies what facts give rise to each claim (*id.* at 64–87).  Although the SAC could be clearer at

24  times, it is no longer a shotgun pleading.  The Court thus DENIES Defendants' motions to

25  dismiss pursuant to Rule 8.

26       B.    Claims Based on the Wells's Murder Charges

27       County Defendants argue the claims based on Wells's murder charge are time-barred

28  because the murder charge was dismissed in April 2017.  (ECF No. 64-1 at 14.)  County

1    Defendants contend any tolling under § 945.3 would have ended at that time, meaning the two-

2    year statute of limitations period expired in April 2019, over a year before the Complaint was

3    filed.  (*Id.* at 15.)  In opposition, Plaintiffs argue although the murder charge was dismissed in

4    2017, claims based on that charge are timely because Wells still faced other charges that were not

5    dismissed until January 2, 2020.  (ECF No. 80 at 14 (citing ECF No. 61 at ¶ 96).)

6          The Court agrees with Plaintiffs that claims based on Wells's murder charge are timely.

7    Wells's murder charge arose from the same conduct at issue for the remaining criminal charges

8    that were pending until January 2020.  *See Forsythe v. United States*, 502 F. App'x 689, 691 (9th

9    Cir. 2012) (two-year statute began "when the remaining criminal charges against the plaintiff

10   were dismissed"); *see also Harding v. Galceran*, 889 F.2d 906, 909 (9th Cir. 1989) ("[Section

11   945.3] serves the independent policy objective of encouraging the criminal defendant to await the

12   outcome of the criminal action before instituting a section 1983 action.").  County Defendants fail

13   to cite any authority to persuade the Court otherwise.

14         Accordingly, the Court DENIES County Defendants' motion to dismiss on this basis.

15               C.      Claims Against Fladager as to Conduct Prior to May 29, 2018

16         County Defendants argue that claims against Fladager for conduct that occurred prior to

17   May 29, 2018 are time-barred based on a two-year statute of limitations for personal injury

18   actions in California.  (ECF No. 64-1 at 13.)  County Defendants further argue § 945.3 does not

19   apply to claims against Fladager, as it only applies to claims against "peace officers," which does

20   not include prosecutors.  (*Id.*)  In opposition, Plaintiffs contend the judicial deception claims

21   against Fladager accrued when charges against Plaintiffs were dismissed in January 2020 and are

22   timely as the SAC was filed less than two years later.  (ECF No. 80 at 13.)  Plaintiffs do not

23   address Defendants' arguments as to § 945.3.  (*See id.*)

24         The Court agrees with Defendants that § 945.3 does not toll claims against Fladager.

25   Prosecutors are not considered "peace officers" under state law.  *See* Cal. Penal Code §§ 830,

26   830.1(a); 832.9(b)(3) (listing peace officers and distinguishing attorneys).  However, based on

27   Plaintiffs' dismissal of Fladager from Claims Two, Five, Six, and Seven (ECF No. 80 at 10

28   (citing ECF No. 75)), it appears the only remaining claim asserted against Fladager is deliberate

6

1  fabrication (Claim Three).[3]  A claim for deliberate fabrication of evidence accrues when the

2  criminal proceeding is resolved in the plaintiff's favor.  *Bradford v. Scherschligt*, 803 F.3d 382,

3  388 (9th Cir. 2015); *McDonough v. Smith*, 139 S. Ct. 2149, 2158 (2019) ("There is not a complete

4  and present cause of action to bring a fabricated-evidence challenge to criminal proceedings while

5  those criminal proceedings are ongoing.").  Plaintiffs allege the state court dismissed their charges

6  on January 2, 2020.  (ECF No. 61 at ¶ 96.)  As such, Plaintiffs' deliberate fabrication claim

7  against Fladager is timely.

8  Accordingly, the Court DENIES County Defendants' motion to dismiss on this basis.

9  D.  Claims Against Fladager as a Prosecutor

10  County Defendants argue claims against Fladager in her role as prosecutor should be

11  dismissed because she has Eleventh Amendment immunity and absolute immunity.  (ECF No. 64-

12  1 at 16.)  In opposition, Plaintiffs argue that Fladager is not entitled to Eleventh Amendment

13  immunity based on allegations she failed to properly train investigators.  (ECF No. 80 at 14.)

14  Plaintiffs further argue Fladager is not entitled to absolute immunity for her administrative and

15  investigative misconduct.  (*Id.* at 16.)  The Court will address each type of immunity in turn.

16  First, as to Eleventh Amendment immunity, the parties agree that state sovereign

17  immunity does not preclude claims against Fladager based on conduct that is administrative in

18  nature rather than prosecutorial.  *Compare Goldstein v. City of Long Beach*, 715 F.3d 750, 759–

19  60 (9th Cir. 2013)) ("[The] District Attorney represents the county when establishing

20  administrative policies and training related to the general operation of the district attorney's

21  office."), *with Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1031 (9th Cir. 2000) ("[A] California

22  district attorney is a state officer when deciding whether to prosecute an individual.").

23  Plaintiffs argue their claims against Fladager do not stem from her role as a prosecutor,

24  but her role in setting local administrative policy and failing to properly train or discipline

25  investigators.  (ECF No. 80 at 16.)  In the SAC, Plaintiffs allege Fladager was responsible for

26

27  [3]  Because Plaintiffs dismissed the state law claims against Fladager, the Court need not and
does not address County Defendants' arguments that Fladager is entitled to immunity for the state

28  law claims under California Government Code § 820.8.  (ECF No. 64-1 at 28.)

1    setting local administrative policies concerning the actions of her investigators.  (ECF No. 61 at

2    ¶¶ 30, 99, 107.)  Plaintiffs further allege Fladager was the final authority in the County, was

3    responsible for policies that allowed constitutional violations to occur, and was responsible for

4    training, supervising, and disciplining her investigators.  (*Id.*)  To the extent Plaintiffs claims do

5    not challenge Fladager's conduct as a prosecutor, Eleventh Amendment immunity does not

6    preclude such claims.

7         Second, as to absolute immunity, the parties agree Fladager is not entitled to absolute

8    immunity for claims related to administrative and investigatory conduct.  Absolute prosecutorial

9    immunity applies only to conduct "intimately associated with the judicial phase of the criminal

10   process."  *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409,

11   430 (1976)).  In contrast, prosecutors "enjoy only qualified immunity, not absolute immunity, for

12   investigatory, administrative, or investigative functions."  *Santana v. Cty. of Yuba*, No. 2:15-cv-

13   00794-KJM-EFB, 2016 WL 1268107, at *14 (E.D. Cal. Mar. 31, 2016).

14        In the instant case, Plaintiffs assert their claims against Fladager are based on allegations

15   about how she acted outside her role as a prosecutor.  (ECF No. 80 at 16.)  To the extent

16   Plaintiffs' claims hinge on administrative and investigative misconduct and not prosecutorial

17   conduct "intimately associated with the judicial phase of the criminal process," absolute

18   immunity does not apply.  *Burns*, 500 U.S. at 48.

19        For these reasons, the Court DENIES Defendants' motion to dismiss based on Fladager's

20   immunity.

21              E.    Unlawful Search and Seizure Based on Judicial Deception

22        County Defendants argue Plaintiffs fail to state judicial deception claims because: (1)

23   Plaintiffs' allegations are conclusory and do not set forth specific facts as to each Defendants'

24   role in the alleged misconduct; (2) Plaintiffs fail to allege Defendants acted intentionally or with

25   reckless disregard for the truth; and (3) Plaintiffs fail to allege any misrepresentation or omission

26   in the warrant affidavit was material to the finding of probable cause.  (ECF No. 64-1 at 23.)  City

27   Defendants argue the claims fail because Plaintiffs do not allege Evers was an integral participant

28   in Plaintiffs' arrests.  (ECF No. 66 at 23.)  In opposition, Plaintiffs argue the SAC alleges more

                                          8

1  than 22 deliberately false and misleading statements or omissions in the warrant affidavit and

2  alleges no reasonable prosecutor would have brought charges based on this evidence.  (ECF No.

3  80 at 26.)  Plaintiffs also argue the SAC alleges in detail the misconduct of each individual and

4  that they acted in concert.  (*Id.* at 27.)

5          "[G]overnment investigators may be liable for violating the Fourth Amendment when they

6  submit false and material information in a warrant affidavit."  *Galbraith v. Cnty. of Santa Clara*,

7  307 F.3d 1119, 1126 (9th Cir. 2002).  Under this authority, "a § 1983 plaintiff must show that the

8  investigator 'made deliberately false statements or recklessly disregarded the truth in the

9  affidavit' and that the falsifications were 'material' to the finding of probable cause."  *Id.* (quoting

10  *Hervey v. Estes*, 65 F.3d 784, 790 (9th Cir. 1995)).  It is true that "a plaintiff cannot hold an

11  officer liable because of his membership in a group without a showing of individual participation

12  in the unlawful conduct."  *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v.*

13  *Wright*, 76 F.3d 292, 294 (9th Cir. 1996)).  However, "district courts construing the group

14  liability doctrine of *Jones* and *Chuman* have upheld [§] 1983 claims against groups of defendants

15  where the pleadings also include factual allegations sufficient to establish that individual

16  defendants were integral participants in the unlawful conduct."  *Martinez v. City of W.*

17  *Sacramento*, No. 2:16-cv-02566-TLN-EFB, 2019 WL 448282, at *16 (E.D. Cal. Feb. 5, 2019).

18          Although Plaintiffs' allegations could be clearer, the Court agrees with Plaintiffs that the

19  allegations support at the very least a reasonable inference that the individual Defendants "made

20  deliberately false statements or recklessly disregarded the truth in the affidavit and that the

21  falsifications were material to the finding of probable cause."  *Galbraith*, 307 F.3d at 1126.  For

22  example, Plaintiffs allege a group including Brown, Bunch, Jacobson, and Evers jointly prepared

23  Plaintiffs' arrest warrant based on "group consensus" as to what charges to seek against Plaintiffs.

24  (ECF No. 61 at ¶ 84.)  Plaintiffs go on to allege over 20 specific false statements,

25  misrepresentations, and/or omissions in the arrest warrant affidavit, such as the omission of

26  multiple other known suspects and use of information gained from a coercive interrogation of

27  Robert Woody ("Woody").  (*Id.* at ¶¶ 86, 130.)  Further, Plaintiffs allege facts specific to each

28  Defendant sufficient to infer that each were integral participants in the allegedly unlawful arrest.

1    (*See, e.g.*, *id.* at ¶¶ 104–106, 108.)  Lastly, Plaintiffs allege "[i]f not for Defendants making these

2    material false statements, misrepresentations, and omissions . . ., Plaintiffs would not have been

3    arrested for murder with special circumstances and subsequently charged." (*Id.* at ¶ 87.)  The

4    Court concludes these allegations are sufficient to state a claim.

5          Thus, the Court DENIES Defendants' motion to dismiss the judicial deception claims.

6          F.      Malicious Prosecution

7          County Defendants argue Plaintiffs' allegations as to their malicious prosecution claims

8    are conclusory.  (ECF No. 64-1 at 19.)  City Defendants add that Evers played no role in the

9    prosecution.  (ECF No. 66 at 20.)

10         To establish a cause of action for malicious prosecution, a plaintiff must demonstrate the

11   prior action was: (1) initiated by or at the direction of the defendant and legally terminated in the

12   plaintiff's favor; (2) brought without probable cause; and (3) initiated with malice.  *Siebel v.*

13   *Mittlesteadt*, 41 Cal. 4th 735, 740 (2007).  A plaintiff must also show the defendant prosecuted

14   him "for the purpose of denying [him] equal protection or another specific constitutional right."

15   *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).

16         With respect to the first element, Plaintiffs point to several allegations in the SAC

17   regarding Brown (ECF No. 61 at ¶ 108), Bunch (*id.* at ¶ 104) and Jacobson's (*id.* at ¶ 105)

18   investigative conduct that initiated the criminal action.  Plaintiffs also cite allegations in the SAC

19   regarding Evers's role in the investigation that led to the criminal action.  (*Id.* at ¶ 106.)  The

20   Court already addressed these allegations in the context of the judicial deception claims.

21   Plaintiffs further allege the criminal action terminated in their favor because the state court

22   dismissed all charges against them.  (*Id.* at ¶ 96.)  With respect to the second and third elements,

23   Plaintiffs allege facts suggesting Defendants' actions were not supported by probable cause and

24   were motivated by a malicious desire to convict Carson.  (*Id.* at ¶¶ 32, 116, 118.)  Lastly,

25   Plaintiffs assert Defendants acted to deny Plaintiffs of their Fourth Amendment right to be free

26   from unlawful seizures.  (*Id.* at ¶ 116.)  The Court concludes these allegations provide at the very

27   least a reasonable inference that Defendants were integral participants in the group conduct and

28   are sufficient to state claim for malicious prosecution.  *Martinez*, 2019 WL 448282, at *16; *see*

10

1    *Usher v. City of L.A.*, 828 F.2d 556, 562 (9th Cir. 1987) (concluding the plaintiff adequately

2    stated a malicious prosecution claim based on allegations that "the defendants illegally arrested

3    him, contrived charges to justify the arrest, submitted false police reports, and initiated his

4    criminal prosecution in bad faith").

5           As such, the Court DENIES County Defendants' motion to dismiss Plaintiffs' malicious

6    prosecution claims.

7                         G.      *Monell*

8           Defendants argue Plaintiffs fail to state *Monell* claims.  (ECF No. 64-1 at 21; ECF No. 66

9    at 17.)  In opposition, Plaintiffs contend the City and County are liable for the alleged misconduct

10   because: (1) they ratified the misconduct at issue; (2) they failed to properly train officers; and (3)

11   they had a practice of making unlawful arrests when officers had only a search warrant and not an

12   arrest warrant.  (ECF No. 80 at 23.)

13          It is well-established that municipalities cannot be held liable under § 1983 for

14   unconstitutional torts of their employees based solely on respondeat superior.  *Monell v. Dep't of*

15   *Soc. Servs. of City of N.Y.*, 436 U.S. 658, 693–94 (1978).  Pursuant to *Monell*, a municipality is

16   only liable under § 1983 when its own illegal acts are a "moving force" in the constitutional

17   violation.  *Id.*  A plaintiff may assert *Monell* liability on one of three grounds: (1) a longstanding

18   practice or custom, which constitutes the "standard operating procedure" of the local government

19   entity; (2) omissions or failures to act that amount to a local government policy of deliberate

20   indifference to constitutional rights; or (3) a local government official with final policy-making

21   authority ratifies a subordinate's unconstitutional conduct.  *Clouthier v. Cnty. of Contra Costa*,

22   591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of L.A.*,

23   833 F.3d 1060, 1070 (9th Cir. 2016).

24          As to the County, Plaintiffs allege Fladager had supervisory and final policymaking

25   authority from the County such that her orders had the effect of setting a particular course of

26   action that caused the constitutional violations against Plaintiffs.  (ECF No. 61 at ¶ 30.)  Plaintiffs

27   further allege Fladager played a significant role in the task force investigation, including

28   receiving updates and discussing next steps.  (*Id.*)  Plaintiffs allege Fladager approved of the

1   unlawful conduct during the investigation, including approving of or ratifying Plaintiffs' false

2   arrests, the decision to pursue Carson and to essentially ignore other more viable suspects, and the

3   decision to retain a cell tower expert who provided misleading evidence to pin the crime on

4   Carson, Plaintiffs, and others.  (*Id.*)  In addition, Plaintiff alleges Bunch was a municipal official

5   whose acts constitute official policy for the County and was responsible for the investigators and

6   police officers' actions during the investigation.  (*Id.* at ¶ 26.)  Alternatively, Plaintiffs allege

7   there was a pattern of arresting individuals without arrest warrants or probable cause and the

8   County failed to provide adequate training to avoid such constitutional violations in the future.

9   (*Id.* at ¶¶ 97, 98, 99, 117, 132.)  Lastly, Plaintiffs allege that facts about multiple allegedly

10  wrongful arrests show a policy, practice, or custom of unlawful arrests.  (*Id.* at ¶¶ 98, 68–79.)

11       As to the City, Plaintiffs allege Carroll is Chief of Police and "authorized and knew,

12  approved of, and/or ratified Evers's intensive involvement, only because the case involved Frank

13  Carson."  (*Id.* at ¶ 110.)  Plaintiffs further allege Carroll was briefed on the status of the Task

14  Force and he ratified and approved of the arrest warrant affidavit, despite the false and misleading

15  statements in that document, and ignored other, more plausible suspects.  (*Id.*)  Plaintiffs also

16  allege that Carroll knew of (and did not object to) the repeated unlawful arrests of Plaintiffs.  (*Id.*

17  at ¶ 68–80.)  Lastly, Plaintiffs allege there was a pattern of arresting individuals without arrest

18  warrants or probable cause as evidenced by their multiple unlawful arrests and City Defendants

19  failed to "provide adequate training" to prevent further constitutional violations.[4]  (*Id.* at ¶¶ 68–

20  79, 97, 98, 132.)

21       Taking these allegations in the light most favorable to Plaintiffs and drawing all

22  reasonable inferences in their favor, the Court concludes Plaintiffs sufficiently allege the City and

23  County, through final decision and policymakers, knew of and approved the alleged constitutional

24  actions of the individual officers.  *See Anglero-Wyrick v. Cnty. of Sonoma*, No. 21-CV-01985-SK,

25  2021 WL 4170677, at *3 (N.D. Cal. Sept. 14, 2021) ("Whether these allegations support a *Monell*

26

27       ---

       [4]       To the extent City Defendants argue Evers is not vicariously liable for the actions of
       others, Plaintiffs clarify in their opposition that they are bringing claims against Evers solely
28     based on his own misconduct and participation in an alleged conspiracy.  (ECF No. 79 at 15.)

1  claim for ratification or simply further support a claim that the County had a pre-existing policy

2  which caused the constitutional violations, Plaintiff has sufficiently alleged a *Monell* claim.").  It

3  is also plausible that the City and County had a policy or custom that was the moving force

4  behind constitutional violations based on Plaintiffs' allegations of multiple wrongful arrests and

5  Defendants' failure to discipline the officers involved.  *See J.M. by & Through Rodriguez v. Cnty.*

6  *of Stanislaus*, No. 1:18-CV-01034-LJO-SAB, 2018 WL 5879725, at *5–6 (E.D. Cal. Nov. 7,

7  2018) (finding it plausible that the County had a policy or custom that was the moving force

8  behind excessive force violations where "[t]he incidents described in the complaint [were]

9  multiple, specific events in which significant force was utilized by Stanislaus County deputies in

10  situations where the force used may plausibly be said to have been excessive[,] . . . the incidents

11  occurred without any disciplining or retraining of the deputies involved[,] . . . [and] [t]he

12  incidents [were] described with sufficient detail to put Defendant on notice of the alleged policy

13  connecting them").

14        Accordingly, the Court DENIES Defendants' motions to dismiss the *Monell* claims.

15               H.     Deliberate Fabrication

16        County Defendants argue Plaintiffs fail to state deliberate fabrication claims and

17  Defendants are entitled to absolute immunity.  (ECF No. 64-1 at 25.)  City Defendants argue

18  Plaintiffs' deliberate fabrication claims fail because they are conclusory.  (ECF No. 66 at 25.)

19        A claim of deliberate fabrication of evidence "requires [Plaintiffs] to show that the

20  criminal proceedings against [them] — and consequent deprivations of [their] liberty — were

21  caused by [Defendants'] malfeasance in fabricating evidence."  *McDonough v. Smith*, 139 S. Ct.

22  2149, 2156 (2019).  The Ninth Circuit has held a plaintiff must allege either: "(1) Defendants

23  continued their investigation . . . despite the fact that they knew or should have known that [the

24  plaintiff] was innocent; or (2) Defendants used investigative techniques that were so coercive and

25  abusive that they knew or should have known that those techniques would yield false

26  information."  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

27        In the instant case, the SAC sufficiently alleges Defendants continued their investigation

28  even though they knew or should have known Plaintiffs were innocent.  (ECF No. 61 at ¶ 128.)

1    For example, Plaintiffs allege Defendants "jointly drafted" the arrest warrant affidavit that
2    "purposefully omitted exculpatory evidence regarding other suspects" and Bunch "destroyed
3    notes" from a conversation with the last person to see Kauffman alive and omitted this fact from
4    the arrest warrant.  (*Id.* at ¶¶ 43, 52, 82, 86, 104(c), 107, 130.)  Moreover, Plaintiffs also
5    sufficiently allege Defendants used investigative techniques with Woody that were so coercive
6    and abusive they knew, or should have known, that those techniques would yield false
7    information.  (*Id.* at ¶ 129.)  The SAC includes several pages of allegations about specific
8    coercive and abusive techniques County Defendants used to secure false testimony, such as
9    lengthy interrogations and threats.  (*Id.* at ¶¶ 57–59.)  Plaintiffs specifically allege the
10   presentation of misleading evidence in the arrest warrant affidavit caused Plaintiffs to be
11   criminally charged.  (*Id.* at ¶¶ 12, 50, 53, 56-58, 82, 86, 87, 128.)  As with the other claims
12   already discussed, the Court finds there are sufficient factual allegations to infer that the named
13   individual Defendants were integral participants in the group conduct.  *Martinez*, 2019 WL
14   448282, at *16.  This is sufficient to state claims for deliberate fabrication.

15        With respect to Defendants' immunity argument, Defendants do not persuade the Court
16   that they are entitled to absolute immunity based on these allegations because police officer
17   witnesses are not entitled to absolute immunity for perjured testimony that brings about a
18   wrongful prosecution, nor are they entitled to immunity for non-testimonial acts such as
19   fabricating evidence.  *Paine v. City of Lompoc*, 265 F.3d 975, 981 n.2, 982 (9th Cir. 2001).

20        For these reasons, the Court DENIES Defendants' motion as to the deliberate fabrication
21   claims.

22                        I.    Eighth Amendment Claim

23        Defendants argue Plaintiffs' excessive bail claims are conclusory.  (ECF No. 64-1 at 27;
24   ECF No. 66 at 25.)  In opposition, Plaintiffs argue courts have consistently sustained excessive
25   bail claims in similar cases.  (ECF No. 79 at 22; ECF No. 80 at 32.)

26        Officers are liable for violating the Eighth Amendment where they "deliberately or
27   recklessly misled" the judicial officer who set bail, and where that bail "would not have been
28   unconstitutionally excessive but for the officers' misrepresentations."  *Woolery v. Smith*, No. 17-

                                        14

1    CV-06786-SK, 2018 WL 3328496, *3 (N.D. Cal. July 6, 2018) (citing *Galen v. Cnty. of L.A.*, 477

2    F.3d 652, 664 (9th Cir. 2007)).  "[A] police officer may be liable for violation of the Excessive

3    Bail Clause for deliberately or recklessly misleading the judicial officer setting bail, or otherwise

4    preventing the judicial officer from exercising his independent judgment."  *Ballew v. City of*

5    *Pasadena*, No. CV 18-0712 FMO (ASX), 2019 WL 9341339, *7 (C.D. Cal. Mar. 29, 2019)

6           In the instant case, the Court agrees with Plaintiffs that the SAC adequately alleges

7    County Defendants deliberately misled the judicial officer, thus preventing the judge from

8    exercising his independent judgment, by failing to disclose exculpatory evidence (ECF No. 61 at

9    ¶¶ 52, 82, 84, 86), coercing false testimony from a witness (*Id.* at ¶¶ 60, 104(d), 105(e)), and

10   including lies and misrepresentations in the search warrant and warrant to secure Wells's arrest

11   (*Id.* at ¶¶ 14, 82, 86).  The SAC further alleges County Defendants fought to have Wells's bail set

12   at $10 million to pressure "Wells to testify against others accused of the Kauffman murder."  (*Id.*

13   at ¶¶ 86, 87, 96, 135.)  These allegations provide at the very least a reasonable inference that

14   Defendants violated the Eighth Amendment.  *See Morse v. Regents of Univ. of Cal., Berkeley*,

15   821 F. Supp. 2d 1112, 1117–18 (N.D. Cal. 2011) (denying motion to dismiss excessive bail claim

16   based on factual allegations suggesting defendants added unsupported charges to a warrant

17   affidavit against plaintiff "for the sole purpose of increasing his bail, so that they could keep him

18   in custody longer, so that they could obtain an illegal search warrant"); *see also Ballew*, 2019 WL

19   9341339, at *7 (denying motion to dismiss excessive bail claim based on factual allegations that

20   officer defendants "deliberately wrote false and misleading reports concerning their beating and

21   arrest of [plaintiff,]" which "were used to book [plaintiff] for a serious felony[,]" which led to

22   plaintiff being detained over night without bail, and when he was released – approximately 36

23   hours later – it was subject to a "high bail" of $50,000).

24          Therefore, the Court DENIES Defendants' motion to dismiss Plaintiffs' Eighth

25   Amendment claim.

26                  J.      Qualified Immunity

27          City Defendants argue Evers is entitled to qualified immunity because he did not violate

28   clearly established law.  (ECF No. 66 at 26.)  City Defendants acknowledge, however, that this

15

1  argument may be better considered on a motion for summary judgment.  (*Id.*)  In opposition,

2  Plaintiffs argue their allegations defeat qualified immunity.  (ECF No. 79 at 23.)

3      In § 1983 actions, qualified immunity "protects government officials from civil liability

4  where 'their conduct does not violate clearly established statutory or constitutional rights of

5  which a reasonable person would have known.'"  *Cunningham v. Kramer*, 178 F. Supp. 3d 999,

6  1003 (E.D. Cal. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  The doctrine

7  "gives government officials breathing room to make reasonable but mistaken judgments" and

8  "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ashcroft v.*

9  *al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

10      In the instant case, the Court cannot conclude that qualified immunity is appropriate at

11  this stage.  Dismissal under Rule 12(b)(6) "is not appropriate unless [the court] can determine,

12  based on the complaint itself, that qualified immunity applies."  *Id.*; *see also Jensen v. City of*

13  *Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998).  Plaintiffs' claims involve a complex array of

14  factual allegations that, if true, may preclude City Defendants from qualified immunity.  The

15  Court concludes a determination of whether qualified immunity applies in this case should be

16  made after further development of the factual record, such as on a motion for summary judgment.

17      Thus, the Court DENIES City Defendants' motion to dismiss on this basis.

18          K.      False Arrest/Imprisonment

19      City Defendants argue Plaintiffs' common law false arrest claims against Evers fail

20  because Evers did not personally arrest Plaintiffs or otherwise cause Plaintiff to be arrested and

21  Evers is immune from liability because a prosecutor charged Plaintiffs with a crime.  (ECF No.

22  66 at 27.)  In opposition, Plaintiffs argue they adequately alleged their false arrest claims and

23  Evers is not immune from liability.  (ECF No. 79 at 24.)

24      A false imprisonment claim in an arrest context arises upon "(1) the nonconsensual,

25  intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable

26  period of time, however brief."  *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000).

27  An officer acts "without lawful privilege" either when he arrests without probable cause, or when

28  he maliciously arrests another by personally serving an arrest warrant issued solely on

1   deliberately falsified information.  *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323
2   F.3d 1198, 1205 n.4 (9th Cir. 2003).

3          As mentioned, Plaintiffs allege Evers was part of the group that chose what charges to
4   seek in the arrest warrant affidavit.  Plaintiffs further allege Evers spoke with Brown about the
5   arrest warrant, knew it contained false and misleading statements and omissions, and did nothing
6   to correct it.  In addition, Plaintiffs allege Evers used various abusive and improper interviewing
7   techniques to coerce a false confession from Woody and failed to disclose material information
8   from the interview on the arrest warrant affidavit.  These allegations are sufficient to provide at
9   the very least a reasonable inference that Evers was an integral participant in arresting Plaintiffs
10  without probable cause and/or based on an arrest warrant issued based on deliberately falsified
11  information.  *See Blaxland*, 323 F.3d at 1205 n.4; *see also Harden v. S.F. Bay Area Rapid Transit*
12  *Dist.*, 215 Cal. App. 3d 7, 15–16 (1989) ("All who take part in or assist in the commission of a
13  false imprisonment are joint tortfeasors and may be joined as defendants without an allegation or
14  proof of a conspiracy.").  As to City Defendants' immunity argument, the allegations already
15  discussed at length support a reasonable inference that Evers acted with malice, which would
16  preclude immunity.  *See id.* at 15 ("Where the arrest is made with malice . . . no immunity
17  attaches, whether or not the arrest was made pursuant to warrant or legal process.").

18         Therefore, the Court DENIES City Defendants' motion to dismiss the false arrest/false
19  imprisonment claims.

20                 L.      Negligent Infliction of Emotional Distress ("NIED")

21         City Defendants argue Plaintiffs' NIED claims fail because they are conclusory.  (ECF
22  No. 66 at 27.)  Plaintiffs oppose.  (ECF No. 79 at 27.)

23         Under California law, "[t]here is no independent tort of negligent infliction of emotional
24  distress . . . [r]ather, the tort is negligence."[5]  *Campos v. City of Merced*, 709 F. Supp. 2d 944, 966
25  (E.D. Cal. 2010) (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993)).  In
26  California, the elements of a negligence claim are "a duty of care, breach of that duty, and the

27  _____

28  [5]      Plaintiffs do not assert standalone negligence claims that would otherwise render
    Plaintiffs' NIED claims duplicative.  (*See generally* ECF No. 61.)

1    breach is the proximate cause of the resulting injury." *Id.*

2         As to the first element, "officers have a duty to perform their official duties in a

3    reasonable manner." *Sanchez v. Cnty. of Sacramento*, No. 2:19-CV-01545-MCE-AC, 2021 WL

4    4066262, at *7 (E.D. Cal. Sept. 7, 2021). Indeed, "[n]egligence liability may be imposed if . . . an

5    officer undertakes affirmative acts that increase the risk of harm to the plaintiff." *Id.* As to the

6    second element, Plaintiffs again cite allegations about the role Evers played in preparing a false

7    arrest warrant and omitting exculpatory evidence to manufacture probable cause. (ECF No. 79 at

8    28–29 (citing ECF No. 61 at ¶ 146).) The Court has already discussed those allegations at length

9    in the context of the previous claims. Plaintiffs' allegations provide at the very least a reasonable

10   inference that Evers breached his duty to perform his duties in a reasonable manner. *Sanchez*,

11   2021 WL 4066262, at *7. As to the final elements of causation and injury, Plaintiffs adequately

12   allege that Evers's conduct led to Plaintiffs' wrongful arrests and prosecutions, which led to

13   Plaintiffs' emotional harm. This is sufficient to state claims for negligence.

14        Thus, the Court DENIES City Defendants' motion to dismiss Plaintiffs' NIED claims.

15              M.     Intentional Infliction of Emotional Distress ("IIED")

16        City Defendants argue Plaintiffs' IIED claims fail because they do not set forth allegations

17   that Evers's conduct was outrageous or intentional. (ECF No. 66 at 27.) In opposition, Plaintiffs

18   argue they have adequately alleged IIED claims. (ECF No. 79 at 31.)

19        To succeed on an IIED claim, Plaintiffs must show that Defendants intentionally or

20   recklessly caused them to suffer "severe or extreme emotional distress" through their "extreme

21   and outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). "A defendant's

22   conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a

23   civilized community." *Id.* (internal quotation marks omitted).

24        Plaintiffs allege they have suffered severe emotional distress because Defendants,

25   including Evers, maliciously included false and misleading information and omitted exculpatory

26   information from the arrest warrant affidavit leading to Plaintiffs' prosecutions for murder. (ECF

27   No. 61 at 86.) A reasonable trier could decide the conduct alleged in the SAC was so outrageous

28   as to exceed all bounds of that usually tolerated in a civilized community. *See Morse v. Cnty. of*

18

1  *Merced*, No. 116CV00142DADSKO, 2016 WL 3254034, at *13 (E.D. Cal. June 13, 2016)

2  (denying a motion to dismiss IIED claim where the plaintiff alleged "individual defendants

3  knowingly misrepresented information in order to arrest him and charge him with murder,

4  apparently in order to exact political retribution against plaintiff's father, a local politician who

5  had been critical of the Sheriff's Department").  While Plaintiffs admittedly could have laid their

6  allegations out more clearly, the Court finds the allegations in the SAC are sufficient to survive a

7  motion to dismiss.

8        Thus, the Court DENIES City Defendants' motion to dismiss the IIED claims.

9      **IV.**    **CONCLUSION**

10        For the foregoing reasons, the Court DENIES Defendants' Motions to Dismiss.  (ECF

11  Nos. 64, 66.)  Defendants are ORDERED to file their responsive pleadings not later than twenty-

12  one (21) days from the electronic filing date of this Order.

13        IT IS SO ORDERED.

14        **DATED:  September 13, 2022**

15

16

17              Troy L. Nunley

18              United States District Judge

19

20

21

22

23

24

25

26

27

28